Anderson J.
delivered the opinion of the court.
The important question in each of these causes is as to the right of the commonwealth to,impose a tax upon property of the Chesapeake and Ohio Railroad Company when the profits of the company have not amounted to ten per centum a year upon its capital. There is no question that corporations are in general like natural persons, liable to taxation. Their capital stock or their property, both real and personal, is taxable to the corporation itself. But this company claims an exemption by contract with the state from taxation.
The question as to the power of a state legislature to grant to a corporation the immunity of an exemption from taxation has been much debated, and decisions have been conflicting. In Thorpe v. The Rutland and Burlington Railway (27 Vt. R. 140) a doubt is expressed as to the entire soundness of the principle of legislative exemptions of corporations from taxation. The power of taxation is an important and essential prerogative of sovereignty, and it has been questioned how far the legislature can divest itself of the right and power to exercise so important a function of sovereignty, or how one legislature can abridge the general power of every sovereignty to impose taxes for the support of government. Brewster v. *346 Hough, 10 New Hamp. R. 138; Mechanics and Traders Bank v. Debolt, 1 Ohio St. 591; Toledo Bank v. Bond, 622.
Efimerous cases might be cited which maintain the want of power in the legislature to exempt corporations or property perpetually from taxation. Mr. Eedfield seems to think that there is ground to question the right of a legislature by one act to extinguish this essential right of sovereignty. And in a note on page-385-6, of his valuable work on the Law of Eailways, he says: “We should not be surprised hereafter to find this whole subject of the right of a state legislature to exempt corporations by their charter from taxation brought in question. But” he adds, “the law at present probably otherwise.” And in this opinion Mr. Cooley concurs, and is more decided. He says: “So far as the power of taxation is concerned, it has been often decided by the supreme court of the Hnited States, though not without remonstrance on the part the state courts, that an agreement by a state for a consideration received, or supposed to be received, that certain property rights or franchises shall be exempt from taxation, or taxed only at a certain agreed rate, a contract protected by the constitution, that the question can no longer be considered an open one.” He adds: “ In any case, however, there must be a consideration, so that the state can be supposed to have-received a beneficial equivalent; for it is considered on sides that if the exemption is made as a privilege only, it may be revoked at any time.” Cooley’s Const. Lim., p. 280-1, and cases cited.
Supposing the question of law to be settled, as thus indicated by Mr. Cooley, we will proceed to inquire: Has the state of Virginia by contract relinquished her right of taxation to any extent as involved in these- *347 causes ? She claims the right to tax only that portion of the property and interests with which the Chesapeake and Ohio Railroad Company is invested, which it derived from the Virginia Central Railroad Company, and also which it acquired by purchase from the state since its incorporation, which she contends has not been relinquished by any act of the legislature, or by contract.
The Virginia Central railroad was a company chartered by the state of Virginia, and it constructed the railroad between Richmond and Covington, with the exception of that portion which is known as the Blue Ridge railroad, extending from the eastern to the western base of the Blue Ridge, a fraction over sixteen miles, which was constructed by the state of Virginia, and the said company was operating the whole line of road between Richmond and Covington when it entered into the contract referred to. The states of Virginia and West Virginia, as authorized'bv acts of their several legislatures, contracted with the said Virginia Central to construct and operate a railroad from Covington to the Ohio river, which would be a continuation or extension of the Central railroad, and authorize the said company to change its name from the “ Central” to the Chesapeake and Ohio Railroad Company. And the said company claims that all its property is now exempt from taxation under the following clause of the contract, viz: “And the said Virginia Central Railroad Company having undertaken and contracted to construct the said railroad on the terms and conditions aforesaid, it is hereby declared and certified that the said company shall hereafter be known as “The Chesapeake and Ohio Railroad Company,”' and is entitled to all the benefits of the charter of the Covington and Ohio railroad, and to all the rights, in *348 terests and privileges which, by the statutes aforesaid, are conferred upon the Chesapeake and Ohio Railroad when organized.”
To divest a state of such an essential attribute of sovereignty, of such an important function of government, the terms of relinquishment should be clear and unequivocal. In Richmond Railway Co. v. The Louisa Railway Co., Mr. Justice Grier refers to former decisions of the court with approbation, “that public grants are to be construed strictly; that any ambiguity in the terms of the grant must operate against the corporation and in favor of the public, and the corporation can claim nothing but what is clearly given by the act”—quoted by Redfield, supra, in note on page 432. And that eminent jurist says: “The language of Taney Ch. J. in Charles River. Bridge v. Warren Bridge, 11 Peters. R. 420, 548, is still more specific, and, in my opinion, eminently just and conservative: ‘the continued existence of a government would be of no great value, if by implications and presumptions it was disarmed of the powers necessary to accomplish the ends of its creation, and the functions it was designed to perform transferred to privileged corporations.’” “ The conclusion of the learned judge and eminent jurist is,” says C. J. Redfield, whose own opinion carries with it almost the weight of authority, “ ‘ that no claim in any way abridging the most unlimited exercise of the legislative power over persons, natural or artificial, can be successfully asserted, except upon the basis of an express grant, in terms, or by necessary implication’” (note on p. 433). The express grant here is, “to all the benefits of the charter of the Covington & Ohio railroad,” and “to all the rights, interests and privileges which by the statutes are conferred upon the Chesapeake and Ohio Railroad Company when organized.”
*349 Was the immunity of exemption from taxation upon the entire line of its road from Richmond to the Ohio river, now claimed by the defendant in error, by the charter upon the Covington and Ohio Railroad Company, or by statute upon the Chesapeake and Ohio Railroad Company when organized? If it was not, the defendant cannot claim the immunity under the contract before recited.
By an act of the 15th of February 1853 the legislature of Yirginia had authorized the construction of a railroad from Covington to the Ohio river, entirely on state account. Appropriations had been made to the work and large sums expended upon it, when it was arrested by the late war. Soon after the conclusion of the war, a portion of the projected road falling within the limits of the new state of West Yirginia, which had been carved from the state of Yirginia by the sword, the legislatures of both states enacted laws, the same in terms, to construct the railroad between Covington and the Ohio river, by an incorporated company, to be styled the Covington and Ohio Railroad Company; and the law declared that no taxation upon the property of the company, that is, of the Covington and Ohio Railroad Company, shall be imposed by the state, until the profits of the company shall amount to ten per centum a year upon its capital. The property and rights and franchises of the Central Railroad Company were taxable to the company by the state at the date of this act. The state surely will not be held to have surrendered that right by the act aforesaid providing for the organization of a company, to be styled “The Covington and Ohio Railroad Company,” and exempting its property from taxation. There is no such relinquishment by express terms, or by the remotest implication.
*350 And by the terms of the contract we have seen that there is no express grant to the Central Railroad Company, either by its old or its new name, of an exemption from taxation at all. It was only an agreement that the Central Railroad Company should have all the benefits which were given by the charter to the Covington and Ohio Railroad Company, which wrere, that no taxation upon the property of the Covington and Ohio Railroad Company shall be imposed by the state. Was the property, which the state now asserts the right to tax, ever property of the Covington and Ohio Railroad Company? Rever! Then it was not exempted from taxation by the charter of the Covington and Ohio Railroad Company; and the benefit of no such exemption is conferred by the terms of said contract. Ror can it be implied that because the state was willing, that any party who would construct and operate a railroad from Covington to the Ohio river should be relieved from all tax upon the road and its rolling stock or its earnings; that if the Central Railroad Company should construct and operate it, the said company should have that immunity, and in addition exemption from all taxation upon its road from Richmond to Covington (then taxable), its rolling stock and all its property, real and personal, and its earnings. Surely it could not be claimed that such was a necessary implication. The reverse is a more reasonable inference, to wit: that the state did not intend to relinquish a subsisting right of taxation upon a road which was already completed and in operation, and upon a work which was then the exclusive property of the state, which the new company had the privilege of purchasing, but for the purchase of which it does not appear that even a proposition was then pending, and which it did not until some time after- *351 wards acquire, and then by a separate contract, in which it does not appear that there was any stipulation for exemption from taxation.
Is exemption from taxation, conferred by the statutes referred to in the contract, upon the Chesapeake and Ohio Railroad Company when organized? There is a provision in section 14 of the act of March 1st, 1867, that it shall have the right any time within two years after its organization to purchase the stock held by the state in said company, and that it may also purchase the right of the state in and to the Blue Ridge railroad in the way prescribed by the act. But we have been unable to find any provision in the statutes referred to exempting the Chesapeake and Ohio Company when organized from taxation.
We are therefore clearly of opinion that the state has neither by act of the legislature nor by contract relinquished her right to tax that portion of the Chesapeake and Ohio l’ailroad which lies between the city of Richmond and the town of Covington, and all the property of the company, real and personal, belonging to that part of its road, and a fair proportion of its rolling stock and of the earnings of the company, to be ascertained and apportioned in such mode as shall be prescribed by law; and that to this end it was entirely competent for the legislature to call for the information required by the several acts referred to in these proceedings.
But these acts require not only reports from the companies of the several matters designated therein; they also provide that the several companies shall be collectors for the state of the taxes imposed on them respectively, and shall at the time fixed for making their several reports pay into the treasury the taxes imposed thereon by law.
*352 The first of these causes, No. 1, is a motion against the defendant for a fine for failing to make report as by the act, and to pay the tax imposed by secti0n 8 of the act, approved July 9, 1870; that is, two and one-half per centum of its net earnings for each quarter of a year, to be ascertained and paid into the treasury as prescribed by section 48 of the act for the assessment of taxes approved June 29, 1870. That section provides, that if the road is only in part within the commonwealth, the report shall show what part is within the commonwealth, and what proportion the same bears to the entire length of the road. The said eighth section can therefore be fairly construed to impose" a tax only upon the proportion of the net earnings -of that portion of the road which is within this commonwealth. But as we have seen, a small portion of that is part of the Covington and Ohio portion of the Chesapeake and Ohio road, and which was exempted by contract from taxation until the profits of the company shall amount to ten per centum a year upon its capital, which has not yet been realized. The court is of opinion, that the tax imposed by this section on that portion of the defendants’ road which lies between Bichmond and Covington is valid, and binding upon the company. But if it can be construed to impose a tax upon any part of the company’s road west of Covington, or upon the net income derived therefrom, which probably was not intended by the legislature, being embraced in the contract of exemption, it would be unconstitutional and void.
No. 2 is a motion for a fine for failing to report, as required by section 91 of the act of February 1871, and to pay the tax imposed by section 8 of act.of March 24, 1871. The tax imposed by this section is fifty cents on every hundred dollars of the estimated *353 value of the real and personal property of the company, and one-half of one per centum, upon the net earnings of the company per annum in excess of to be ascertained and paid into the treasury as prescribed in section 91 of the aforesaid act. This act is obnoxious to the objection made to the act of the previous year, so far as it imposes a tax upon any part of the Covington and Ohio portion of the defendants’ road.
Eo. 8 is a motion for a fine for failing to report, as required by section 91 of the act of March 15, 1872, and to pay the tax imposed by section 8 of the act of April 8, 1872. The tax imposed by this section is the same imposed by the act of the previous year upon the real and personal property of the company, and so far as it is a tax upon the property of the company, belonging to that portion of the road lying west of Covington, for the reasons already stated, it is invalid. But it is provided, that in lieu of the property tax there shall be paid upon the indebtedness of the company, out of all interest due and payable upon such indebtedness after the passage of said act, a tax equivalent to fifty cents upon the one hundred dollars of the market value of the bonds upon which such interest shall accrue, the market value of such bonds to be ascertained as of the first day of May in each year. And the company is required to retain and collect for the state the said tax out of the interest upon its indebtedness, as well as to bonds held and owned by non-residents as residents of this state, and deducting the tax from the interest, to pay the same into the treasury, to the credit of the auditor of public accounts, within thirty days after such interest shall have become due or payable. And the tax so retained and paid over shall be pro tonto a just and proper credit and *354 offset- in favor of said company against any claim for such interest. And it is further provided, that the out of the interest upon which such tax shall be retained, shall be exempt in the hands of their owners from the tax imposed by this state upon property and from assessment. It is contended by the learned counsel for the defendant that this tax is unlawful. It is obviously a tax upon the creditor, whether resident or non-resident, which is required to be paid by the debtor, whose domicil is within the state.
It seems to be pretty well settled by judicial decisions, that the stock or bonds of a corporation of this state, which are owned and held by inhabitants of another state, are not liable to taxation here. Judge Hedfield says: “As to shareholders’ interest, and all choses in action, they are personal to the creditor, and only taxable in the place of his domicil. The creditor cannot be taxed in the place of the domicil of the debtor, unless he resides there; nor can the debtor be taxed for the debt, and allowed to deduct the tax from it; nor can a tax against the creditor be imposed upon the property which is pledged or mortgaged to secure a debt, and thus made to apply towards the payment of the debt. The legislature has no power to tax choses in action held by non-residents. They are altogether beyond their jurisdiction. Redfield’s Law of Railw., p. 461. Angel and Ames on Corp. § 458, is in accord. Judge Cooley says in his recent work on Taxation, page 15, “ corporations, it is conceded, may be taxed like natural persons, on their property and business. But debts owing to foreign creditors, by either corporations or individuals, are not the subject of taxation. The creditor cannot be taxed, because he is not within the jurisdiction, and the debts cannot be taxed in the debtor’s hands, through any fiction of the law, *355 which is to treat them as being for this purpose, the property of the debtors.” And the doctrine as thus laid down is supported by the current of decisions. We must conclude, therefore, that so much of the said act as imposes a tax upon the indebtedness of the company, which is held and owned by non-residents, is invalid and void.
hlo 4 is a proceeding under the same acts of assembly last named, which continued in force for the year 1878, and must be disposed of in the same way.
The tax upon the indebtedness of the company is ■not continued by the act of 1874. The tax imposed is a tax upon the real and personal property within the commonwealth, and an income tax, and if the same is confined to the portion of the Chesapeake and Ohio Company’s road which lies between the city of Richmond and the town of Covington, the court is of opinion that the act by which it is imposed is constitional and valid. We are of opinion, therefore, to reverse the judgment of the circuit court with costs in each case.
Judgment reversed.